<7A>

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 30, 2019.**



_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-50554-CAG |
| | § | |
| MARY WALKER THOMAS | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

### ORDER DENYING DEBTOR'S MOTION TO MODIFY PLAN POST-CONFIRMATION IN RESPONSE TO TRUSTEE'S MOTION TO DISMISS, TO ADD POST-PETITION MORTGAGE ARREARS AND FIRST REQUEST FOR ADDITIONAL ATTORNEY'S FEES (ECF NO. 21)

This is the Court's Order on Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss, To Add Post-Petition Mortgage Arrears and First Request for Additional Attorney's Fees (ECF No. 21). On August 7, 2018, the Trustee filed Trustee's Motion to Dismiss Case for Failure to Make Plan Payments (ECF No. 16) as Debtor was in arrears $1,928.00 through July 2018. On September 13, 2018, Debtor filed Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss, To Add Post-Petition Mortgage Arrears and First Request for Additional Attorney's Fees (the "Motion to Modify") (ECF No. 21). The Court held a hearing on this matter on October 25, 2018. At the hearing, the

1

Trustee raised an oral objection to the Motion to Modify. Thereafter, the Court requested briefing from the Parties, and ultimately took the matter under advisement. For reasons stated in this Order, the Court is of the opinion that the Motion to Modify should be DENIED.

### SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1408(1).

### BACKGROUND

On March 9, 2018, Mary Walker Thomas ("Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code. (ECF No. 1). On July 5, 2018, Debtor's Plan[1] was confirmed (ECF No. 14) requiring Debtor to pay $950.00 per month for the first two months, and $964.00 for the remaining term of the 60-month Plan.[2] (*Id.*) Debtor's Plan pays approximately 100% dividend to the scheduled general unsecured debt. (ECF No. 2). The Plan reflects a $117.00 value of non-exempt assets. (*Id.*) The applicable commitment period is 36 months. (*Id.*) Under Debtor's Plan, the Trustee is to make all pre-petition mortgage arrears payments and post-petition mortgage payments to Shellpoint Mortgage Servicing ("Shellpoint"). (*Id.*) Debtor's Plan identifies Debtor's pre-petition mortgage arrears as $10,259.03 to be paid pro rata at 0.00% interest. (*Id.*) According to Debtor's Plan, this pre-petition mortgage arrears includes a gap payment for April 2018's

---

[1] Pursuant to Rule 3015.1, this District issued its Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan on October 16, 2017, adopting a form chapter 13 plan to be used throughout the Western District of Texas. (Order #17-02). The District Plan is attached to the Court's Standing Order and went into effect on November 1, 2017. Section 7.6 of the District Plan requires that the Chapter 13 Trustee pay all post-petition monthly mortgage payments to the mortgage creditor unless the debtor is current on the mortgage on the petition date.

[2] On the date of Debtor's plan confirmation hearing, Debtor had made two plan payments totaling $1,900 for the months of April and May. (ECF No. 23). Thus, at the time of confirmation, according to the Trustee, the Trustee had sufficient funds to make the post-confirmation monthly mortgage payment of $634.34 for May and June as the April post-petition mortgage payment is included in the mortgage arrears pursuant to The Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan. (*Id.*) Stated differently, the Trustee used April's plan payment to pay the May mortgage and May's plan payment to pay the June mortgage. April's mortgage payment was not due because the April mortgage payment was included in the mortgage arrears.

2

mortgage payment.[3] (*Id.*)

Debtor did not make her July plan payment,[4] and as a result, the Trustee filed Trustee's Motion to Dismiss Chapter 13 Case (ECF No. 16). In response, Debtor filed Debtor's Motion to Modify (ECF No. 21) to which the Trustee orally objected.[5]

Debtor proposes to modify her Plan to: (1) cure the post-petition mortgage arrears incurred through November 2018, (2) resume conduit mortgage payments in December 2018, and (3) cure Plan payment arrears incurred through August 2018, by increasing Debtor's Plan payment and without extending Debtor's Plan beyond 60 months from confirmation of Debtor's Plan. (*Id.*) To accomplish this, Debtor proposes to add a secured claim to the Plan for post-petition mortgage payment arrears being cured in the amount of $2,537.24 to be paid at 0% interest through Debtor's Plan. (*Id.*) The arrearage amount of $2,537.24 reflects four post-petition mortgage payments which "includes a gap payment through the November 2018 mortgage payment." (*Id.*) As Debtor's Motion to Modify was filed in September 2018, this proposal includes months for which the mortgage payment has not yet come due—namely October and November 2018. (ECF No. 23). Thus, Debtor proposes that the Trustee cease making the conduit mortgage payments, rather than

---

[3] A gap payment is the first post-petition mortgage payment that comes due after the filing of the petition which is added to the claim for pre-petition mortgage arrears. The purpose of the gap payment is to allow a debtor to make plan payments as required under 11 U.S.C. § 1326(a)(1), so that the Trustee then has sufficient funds to make the post-petition mortgage payments that come due after the first plan payment is due upon confirmation of the plan. Generally, and as is the case here, debtors generally file for bankruptcy after the first of the month. Pursuant to § 1326(a)(1), a debtor's first plan payment is not due until thirty days after the filing of the plan or the order for relief, whichever is earlier. Thus, a debtor's first plan payment will not be due until after the first post-petition mortgage payment is due under the plan. Therefore, the concept of the gap payment is to allow for a debtor to have paid to the Trustee the funds to pay the mortgage payments that have come due while effectuating a means of cure and maintain under § 1322(b)(2).
[4] Subsequent to filing her case, Debtor fell behind on her post-petition monthly Plan payments to the Trustee (which included her monthly conduit mortgage payment) due to having to care for her daughter after her daughter was shot multiple times in front of Debtor's home. (ECF No. 21). Debtor's daughter has been in rehabilitation and therefore unable to work and make her standard contribution to Debtor's household income. (*Id.*). Debtor's son is now contributing to Debtor's household income to assist Debtor with her Plan payment. (*Id.*).
[5] On January 14, 2019, the Trustee filed a written objection: Trustee's Objection to Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss, To Add Post-Petition Mortgage Arears and First Request for Additional Attorney's Fees (ECF No. 25). Because this Objection was filed after the due date for briefs on the matter, the Court did not consider the merits of the Objection.

paying the post-petition mortgage arrears retroactively, and to resume making the conduit mortgage payments in December 2018. Debtor also proposes to increase her plan payment to $1,022.00 per month for one month and then increase her payment to $1,050.00 for the remaining term of the Plan. (ECF No. 21.). Under the terms of the Motion to Modify, Debtor will still pay a 100% dividend to scheduled general unsecured debt. (*Id.*).

As of the date of the Hearing on the Trustee's Motion to Dismiss, Debtor was in arrears $1,726.00 on plan payments of $950.00 through October. (Hearing Audio, 1:16:44, Oct. 25, 2018). As of the date of the Trustee's Brief in Support of Trustee's Motion to Dismiss Chapter 13 Case and Objection to Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss (ECF No. 23), December 4, 2018, Debtor has made the proposed plan payments through November. Moreover, the Trustee notes that as of the Trustee's disbursement dated November 1, 2018, Debtor is current on the post-petition conduit mortgage payments for May through November. (ECF No. 23). As such, the Court understands this to mean that the Trustee has retroactively paid Shellpoint the post-petition mortgage arrears.

## PARTIES CONTENTIONS

The Trustee argues that Debtor's Motion to Modify must be denied because the issue of adding post-petition mortgage payments is moot. According to the Trustee's records, Debtor has made the proposed plan payments for August through November and is current with the post-petition mortgage payments for May through November. Thus, according to the Trustee, the only remaining issue before the Court is whether the increased Plan Payment proposed by the Debtor is sufficient to cure the plan payment arrears and maintain a 100% distribution to the unsecured creditors pursuant to the Plan. Alternatively, the Trustee argues that Debtor's modification is in

direct contradiction of the maintain requirement of 11 U.S.C. § 1325(b)(5).[6] Specifically, the Trustee submits that Debtor's modification when filed proposed to cure defaults that did not exist as the ongoing mortgage payments had not yet come due and effectively directs the Trustee to cease making payments on a current mortgage. According to the Trustee, ceasing payments on a current mortgage is not maintaining payments and puts Debtor in breach of her underlying mortgage obligation. The Trustee also argues that Debtor proposes to impermissibly modify the rights of the mortgage holder related to the right to charge interest and fees on post-petition defaults by attempting to allow the claim to be paid at 0.00% interest. Finally, the Trustee submits that the modification has been proposed in bad faith because the modification: (1) subjects the debtor to a breach of her underlying mortgage obligation; (2) proposes to extend the payment term beyond sixty months from the date that the first payment is due; and (3) appears to be solely for the benefit of Debtor's attorney in the payment of his fees.

Debtor argues that the circumstances that exist pre-confirmation that necessitate including a gap payment for purposes of accommodating the delay between a debtor's first plan payment and when the Trustee makes its disbursement are no different than the circumstances that exist for purposes of a post-confirmation modification to cure a post-petition debt and therefore, Debtor should be permitted to propose gap payments to cure post-petition mortgage defaults. Debtor also argues that if a gap payment is not included between the time when a debtor resumes paying the Trustee and when the Trustee will be able to disburse the conduit mortgage payment, a debtor's mortgage will not be fully cured and in effect reinstated, otherwise the Trustee will not be able to make Debtor's mortgage payments on time. Next, Debtor contends that the Trustee's approach would result in Debtor's mortgage continuing to be behind for months with no other creditor, such

---

[6] Unless otherwise specified herein, all references to U.S.C. refer to 11 U.S.C. *et seq.*

as car lenders and attorneys, being paid for extended periods of time depending on the percentage of the Plan payment that is attributable to the conduit mortgage payment. Debtor asserts this would result in car lenders seeking to lift the automatic stay due to lack of adequate protection and Debtor's attorney having to go without payment until the mortgage becomes current. Debtor also argues that the Trustee's approach is contrary to section 7.6, paragraph 7 of the District Form Chapter 13 Plan. Last, Debtor also argues that Debtor's approach is consistent with the Fifth Circuit's decision in *In re Mendoza*, 111 F.3d 1264, 12678 (5th Cir. 1997) and Judge Bohm's decision in *In re Perez*, 339 B.R. 385, 403–05 (Bankr. S.D. Tex. 2006).

## LEGAL ANALYSIS

### A. The matter is not moot because §1329(b)(2) preserves the Court's power to decide the merits of the Motion to Modify.

The Trustee argues that Debtor's Motion to Modify must be denied because Debtor is now current on her conduit mortgage and therefore the issue of adding missed post-petition mortgage payments is moot. Thus, according to the Trustee, the only remaining issue before the Court is whether the increased Plan payment proposed by the Debtor is sufficient to cure the plan payment arrears and maintain a 100% distribution to the unsecured creditors pursuant to the Plan. The Court disagrees.

To determine whether the issue of adding post-petition mortgage payments is moot depends on whether the proposed terms of a plan modification which have not been approved or disapproved by a court may be mooted by an objecting party who, subsequent to the filing of the plan modification, takes action to moot the issue. The Fifth Circuit has addressed this issue under different circumstances in *In re Meza*, 467 F.3d 874, 879 (5th Cir. 2006). In *Meza*, a chapter 13 trustee filed plan modification seeking to increase a debtors' distribution to unsecured creditors as a result of an income tax refund the debtors received. *Meza*, 467 F.3d at 876. Subsequent to the

6

filing of the trustee's modification and before the scheduled hearing, the debtors paid the trustee the balance of their confirmed plan and objected to the trustee's proposed modification asserting it was untimely under § 1329(a),[7] and as such, the debtors were entitled to their discharge. *Id.* After reasoning that the trustee's motion was filed timely because it was filed before the plan payments were completed, the Fifth Circuit found that the debtors were precluded from making their final payment and receiving a discharge under the earlier confirmed plan until the court could consider the merits of the plan modification:

> Because the modification was timely filed, and would become effective after the notice period unless disapproved, it precluded debtors from making their final payment under the earlier confirmed plan.
>
> * * *
>
> [Sub]section 1329(b)(2) provides that the modified plan "*becomes the plan* unless, after notice and a hearing, such modification is disapproved." Read [in conjunction with § 1329(a)], both subsections show that, when a modification request is timely filed, the completion of the plan and eventual discharge of the debtor is stayed until the bankruptcy court is allowed to consider the modification on its merits. A contrary result would encourage gamesmanship on behalf of debtors and prevent them from repaying creditors "to the extent of [their] capabilit[ies]. . . . Therefore, rather than disapproving [the modification] as untimely, the bankruptcy court should have considered Trustee's proposed modification on the merits.

*Id.* at 879–80 (emphasis in original) (alteration in original) (citations omitted). Moreover, the court also found that, notwithstanding the debtors' attempt to circumvent the modification, § 1329(b)(2) preserved the bankruptcy court's authority to consider the merits of the trustee's motion. *Id.* at 880.

---

[7] Section 1329(a) of the Bankruptcy Code permits a debtor, trustee, or unsecured creditor to modify a plan "[a]t any time after confirmation of the plan but before the completion of payments under such plan."

7

The Court finds that the principles articulated in *Meza* apply here.[8] Debtor filed its Motion to Modify seeking to modify Debtor's Plan to: (1) cure post-petition mortgage arrears by adding a secured claim to the Plan for post-petition mortgage arrears, (2) include a gap payment for the post-petition mortgage arrears, and (3) resume conduit mortgage payments in December 2018 by directing the Trustee to cease making conduit-mortgage payments for the months of August, September, October, and November 2018. The Trustee, subsequent to the filing of the Motion to Modify and related hearing, but prior to the due date for briefs, made payments to Shellpoint in an effort to make Debtor's mortgage current. Under *Meza*, by which this Court is bound, while the Motion to Modify would not be effective until after notice and hearing, the Court still has the authority to consider the merits of the Motion to Modify because § 1329(b)(2) temporarily preserves the proposed terms of the Motion to Modify and stays all actions that would moot those terms. *See* **Germeraad v. Powers**, 826 F.3d 962, 969 (7th Cir. 2016) (finding an appeal is not moot because under § 1329(b)(2), a bankruptcy court still has the power to approve a plan modification notwithstanding that debtors had completed plan payments by the time the appeal was heard (citing *Meza,* 467 F.3d at 879–80)).[9] While the Trustee may not agree with Debtor's proposed terms, the Trustee cannot prevent the Court from considering the merits of the proposed terms by eliminating the circumstances under which the modification arose. Here, those circumstances were the presence of post-petition mortgage arrears which were eliminated by the Trustee when she

---

[8] The Court recognizes there are a number of factual distinctions between the facts before the Court and *Meza*. In the Court's opinion, however, these factual distinctions are not material to the Fifth Circuit's interpretation of § 1329(b)(2) and its effect on parties attempting to circumvent a plan modification, regardless of whether it is the debtor or trustee who is proposing the plan modification.

[9] In **Powers**, the Seventh Circuit interpreted § 1329(b)(2) to mean "that a modification is effective . . . on the date the party requests modification on the plan, unless the court later disapproves it." **Powers**, 826 F.3d at 969 (citing 2 Hon. W. Homer Drake, Jr. et al., *Chapter 13 Practice and Procedure*, § 21:7 at 642 (2d ed. 2015)). For purposes of this Order, the Court does not believe this distinction to be material. Regardless of how a court interprets § 1329(b)(2), the provision still preserves the proposed terms of a modification until after notice and hearing. Whether a plan modification is effective on the date of filing or after notice and hearing does not deprive a court of subject matter jurisdiction to consider the merits of a plan modification.

rendered payment to Shellpoint. Thus, based on the foregoing, the Court finds that the issue of adding missed post-petition mortgage payments is not moot.

### B. The Motion to Modify does not satisfy the Fifth Circuit's test in *Mendoza* because it does not propose to simultaneously maintain current payments.

Debtor articulates the issue before the Court as "whether motions to modify plans to cure both plan payment arrears and conduit mortgage payment arrears should contain gap payment(s) in order to account for the delay between the time that a Debtor resumes making plan payments and the time the trustee will be able to resume remitting conduit mortgage payments to Debtor's mortgage creditor." (ECF NO. 24). The Court has considered the arguments of both Parties, whether or not addressed herein, and is of the opinion that the answer should be "no."

As previously mentioned, Debtor's Motion to Modify proposes to add a secured claim to the Plan for four post-petition mortgage payments through the November 2018 mortgage payment to be paid with 0.0% interest over the life of the plan and increase the plan monthly payments. Debtor's Motion to Modify, when filed, includes months for which the mortgage had not yet come due. The basis for Debtor's Motion to Modify is § 1322(b)(5), which states that a plan may, "notwithstanding paragraph 2 of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" Section 1322(b)(2) states that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal business[.]" Thus, the prohibition on the modification of a mortgagee's rights under 1322(b)(2) is subject to a debtor's right to propose a plan, or modify a plan, that provides for curing of any default and maintenance of payments under § 1322(b)(5). *Nobleman v. American Sav. Bank*, 508 U.S. 324, 329 (1993).

The Parties do not dispute that the Fifth Circuit's opinion in *In re Mendoza* holds that a debtor can modify its plan to cure post-petition mortgage arrears under § 1322(b)(5). *In re Mendoza*, 111 F.3d 1264, 1268 (5th Cir. 1997). Consistent with the Eleventh Circuit, the *Mendoza* court concluded

> under a plain reading of § 1322(b)(5), the legislative intent, and the underlying policy of Chapter 13, these grounds mandate the conclusion that a debtor's plan may be modified to include postpetition mortgage payments in arrears. . . . [T]o preserve the Bankruptcy Code's balance of protections, we further conclude that the modification must comply with the requirements of § 1322(b)(5) and that the bankruptcy court should inquire whether the proposed modification comports with § 1322(b)(5)'s requirement that such a cure be effected within a reasonable time and simultaneously maintain current payments on any long term secured loan.

*Id*. at 1268–69 (citing *In re Hoggle*, 12 F.3d 1008, 1012 (11th Cir. 1994)). Thus, the Fifth Circuit provides the Court with the proper inquiry: Does the Motion to Modify propose: (1) that the cure be effected within a reasonable time and (2) to simultaneously maintain current payments on the mortgage. Here, the Parties dispute whether the second prong is met.

To satisfy the second prong under *Mendoza*, the Motion to Modify must propose to maintain current mortgage payments by paying the mortgage payment as it comes due. The Plan and the Note attached to Shellpoint's Proof of Claim (Claim No. 2-1)[10] state that Debtor's mortgage payments are due on the first of each month. (ECF No. 2, ¶ 7.6, Claim No. 2-1, p. 34, ¶ 3(A)). Under the terms of the Note, Debtor also agrees to "make these payments *every month* until [Debtor has] paid all of the principal and interest and any other charges . . . that [Debtor] may owe under [the] Note." (Claim No. 2-1, p. 34, ¶ 3(A)) (emphasis added). Thus, to maintain current payments under § 1322(b)(5) while effectuating a cure during a reasonable time, the Motion to

---

[10] The Court recognizes that neither Party presented evidence of the terms of Debtor's mortgage note. Nonetheless, because "a court may take judicial notice of related proceedings and records in cases before the same court," and Shellpoint's Proof of Claim is a record before this Court, the Court may consider Shellpoint's Proof of Claim. *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985)

10

Modify must propose to pay mortgage payments on the first of *every* month. Here, the Motion to Modify proposes that the Trustee skip months for which the mortgage is due, namely August, September, October, and November, and resume making mortgage payments in December even though Debtor's Plan payments to the Trustee consist of Debtor's monthly mortgage payment. The effect of this is that the amount of the Plan payment that would normally be attributable to the Debtor's mortgage payment will be paid to other creditors who have also not been paid as a result of Debtor not making Plan payments in previous months. By temporarily ceasing payments to Shellpoint, the Motion to Modify does not propose to pay Debtor's mortgage payments as the payments come due on the first of every month, and therefore is not maintaining *current* payments as required under ***Mendoza***.

The Court notes that Shellpoint has not taken a position on the Motion to Modify. Shellpoint's participation in the matter, however, does not change the result. Section 1322(b) applies to any modification filed under § 1329(a). 11 U.S.C § 1329(b)(1). Section 1322(b)(5) allows for the curing of a delinquent long-term debt, but permitting such a cure is conditioned upon the Debtor also simultaneously maintaining current payments on such debt. ***Mendoza***, 111 F.3d at 1268–69. Thus, while the lack of creditor participation is noted, the Court cannot grant the Motion to Modify because it does not satisfy the statutory conditions in § 1322(b)(5) as interpreted under ***Mendoza***.[11]

Debtor also argues that Debtor's approach is consistent with the Fifth Circuit's decision in ***In re Mendoza*** and Judge Bohm's decision in ***In re Perez***. The Court disagrees. As the Court has already addressed ***Mendoza***, the Court will address Debtor's reference to ***Perez***.

---

[11] The Trustee argues that the Motion to Modify is an impermissible modification of the mortgage creditor's rights under § 1322(b)(2). Because the analysis under ***Mendoza*** is dispositive of the issue, and because Shellpoint has not filed an objection asserting that position, the Court believes it is neither necessary nor appropriate to address this argument.

11

Debtor cites to *Perez* for the proposition that including future mortgage payments in a claim for pre-petition mortgage arrears is part of a permissible cure and maintain provision. The Court finds this reliance misplaced as *Perez* is immediately distinguishable. *Perez* dealt with challenges to a Local Rule and specific mortgage payment procedures adopted by the Southern District of Texas addressing payments made to the mortgage creditor prior to plan confirmation. *Perez*, 339 B.R. at 389. Under the Local Rule, home mortgage payments were to be made through the chapter 13 trustee in accordance with a separate set of procedures which provided:

> Amounts received by the holder of the ongoing mortgage prior to confirmation must be applied by the holder to the next payment due without penalty of the terms of the note; or the holder must notify the trustee in writing that it waives all late charges that accrue after the order for relief in this case. Amounts received by the holder of the ongoing mortgage after confirmation must be applied in accordance with the plan.

*Id.* at 402. Specifically, the debtors argued that because the Local Rule required the lien holders to accept late payments from the chapter 13 trustee and waive their rights to late fees, the Local Rule modified the lien holder's rights in contravention of § 1322(b)(2). *Id.* The court explains why the particular procedure does not modify a lien holders rights, but then asserts that to the extent that the Local Rule and applicable procedures do modify such rights, the procedures were a permissible means of effectuating cure and maintain under § 1322(b)(5). *Id* at 404.

*Perez* deals with a specific means of applying *pre-confirmation* mortgage payments and here, the dispute centers around the treatment of *post-confirmation* mortgage arrears under an existing cure and maintain plan provision subject to the *Mendoza* test. Debtor asserts there is no distinction. The Court, however, views it differently.

First, the Court does not disagree with the holding in *Perez*. The Court, however, does not view *Perez* as having any bearing on the issue before the Court. The Western District of Texas requires that debtors not current on their mortgage as of the date of petition file a conduit mortgage

12

plan where the Trustee acts as the disbursing agent for the debtor's mortgage payments. District Plan, § 7.6. Thus, a logistical problem arises because, by statute, a debtor's first plan payment is not due until thirty days after the filing of the plan or order for relief, whichever is earlier, which is after the first post-petition mortgage payment is due under the plan. 11 U.S.C. § 1326(a)(1). To solve this logistical problem, the District Plan calls for the inclusion of a "gap payment." A gap payment is the first post-petition mortgage payment that comes due after the filing of the petition which is added to the claim for pre-petition mortgage arrears. The purpose of the gap payment is to allow a debtor to make plan payments as required under § 1326(a)(1), so that the Trustee then has sufficient funds to make the post-petition mortgage payments that come due after the first plan payment is due upon confirmation of the plan. Generally, and as is the case here, debtors generally file for bankruptcy after the first of the month. Pursuant to § 1326(a)(1), a debtor's first plan payment is not due until thirty days after the filing of the plan or the order for relief, whichever is earlier. Thus, a debtor's first plan payment will not be due until after the first post-petition mortgage payment is due under the plan. Therefore, the concept of the gap payment is merely a vehicle used to allow for a debtor to have paid to the Trustee the funds to pay the mortgage payments that have come due while effectuating a means of cure and maintain under § 1322(b)(2).

Having the Trustee to act as the disbursing agent for mortgage payments is not only consistent with the Bankruptcy Code, it is required under the Bankruptcy Code. Section 1326(c) requires the Trustee make payments to creditors under the plan except as otherwise provided in the plan or order confirmation the plan. Whether a plan may allow for direct disbursements by the debtor is up to the discretion of the bankruptcy court. **In re Foster**, 670 F.2d 478, 486 (5th Cir. 1982). "Direct disbursements by debtors is not an unqualified right; rather, it is a privilege." **Perez**, 339 B.R. at 390 (citations omitted) (internal quotation marks omitted). The Bankruptcy Court in

the Western District of Texas has elected to follow the general rule under the Code and have the Trustee serve as the disbursing agent in cases where a debtor is not current on their ongoing mortgage as of the petition date. The use of gap payments is merely a procedure used to facilitate the Trustee acting as a disbursement agent. Without doing so, the debtors would not be able to effectuate a proper cure and maintain which allows for debtors to stay in their homes during the pendency of their chapter 13 case.

Debtor also argues that if a gap payment is not included between the time when a debtor resumes paying the Trustee and when the Trustee will be able to disburse the conduit mortgage payment, a Debtor's mortgage will not be fully cured and in effect reinstated, otherwise the Trustee will not be able to make Debtor's mortgage payments on time. The Court concludes otherwise. First, whether a debtor's mortgage has been fully cured and therefore reinstated is not determined on an interim basis throughout the life of a debtor's case, but rather after completion of a debtor's plan. The District Plan expressly addresses this:

> Arrears on long term debt and pre-petition mortgage arrearage claims shall be paid pursuant to the payment schedule set forth below. Upon discharge, if the pre-petition arrears and the post-petition ongoing payments are current on Debtor's Principal Residence, the default will be deemed cured and the note reinstated according to its original terms, including the retention of any security interest.

District Plan, § 7.7. Thus, whether a debtor's mortgage has been fully cured and therefore reinstated is not determined on an interim basis throughout the life of a debtor's case, but rather after completion of a debtor's plan and upon discharge. *See also* Fed. R. Bankr. Proc. 3002.1 (providing the procedure for determining whether: (1) debtor has paid the full amount required to cure the default on its claim and (2) whether the debtor is otherwise current on all payments). Second, the Trustee represented to the Court, and Debtor did not dispute, that as of the date of the Trustee's Brief, Debtor has made the proposed plan payments through November and as of the

Trustee's disbursement dated November 1, 2018, Debtor is current on the post-petition conduit mortgage payments for May through November. Trustee's brief is dated December 4, 2018. According to the Court's calculations, Debtor's subsequent Plan payment was due sometime around December 9, 2019. If Debtor's mortgage is current through November and Debtor continues to timely make her Plan Payments, Debtor's mortgage will remain current and the Trustee can continue to timely disburse Debtor's mortgage payments.

Next, Debtor contends that the Trustee's approach would result in Debtor's mortgage continuing to be behind for months with no other creditor, such as car lenders and attorneys, being paid for extended periods of time depending on the percentage of the Plan payment that is attributable to the conduit mortgage payment. Debtor asserts this would result in car lenders seeking to lift the automatic stay due to lack of adequate protection and Debtor's attorney having to go without payment until the mortgage becomes current. The Court understands Debtor's concern; however, all parties, including Debtor's attorney and all its creditors are on notice of such a consequence. The Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan (the "Standing Order") sets forth such plan provisions in addition to those set forth in the Plan which all parties have notice of an opportunity to object. Section II.I of the Standing Order instructs the Trustee to disburse funds according to a specific priority scheme:

> Order of Payment. Unless the Plan states otherwise, the Trustee shall disburse the funds received as follows:
>
> (i) Trustee Fees on receipt
> (ii) Ongoing Mortgage Payments
> (iii) Adequate Protection Payments
> (iv) § 503 Administrative Claims (Attorney Fees and other Administrative Claims) – subject to the Standing Order for Chapter 13 Administration for the Division
> (v) Secured Claims
> (vi) § 507 Priority Claims
> (vii) General Unsecured Claims

15

Thus, if the Trustee receives funds, the Trustee is directed by the Plan to disburse such funds according to the priority scheme enumerated above which prioritizes ongoing mortgage payments, including maintenance of current mortgage payments under § 1322(b)(5) ahead of payments to other creditors. Furthermore, section 7.6 of the Plan prescribes that "when Debtor makes a Plan Payment that is insufficient for the Trustee to disburse all ongoing mortgage payments required [under the Plan], the Trustee shall hold Plan payments until a sufficient amount is received to make a full ongoing mortgage payment." District Plan, § 7.6. Here, Debtor identifies her ongoing mortgage payment under section 7.6 as her monthly mortgage payment to Shellpoint due on the first of each month. (ECF No. 2). Therefore, under section 7.6, even if Debtor does not pay her plan payment in full, so long as the Trustee has sufficient funds on hand to pay the full ongoing mortgage payment, Shellpoint will be paid even when other creditors are not paid. Thus, under these two provisions, creditors and other parties-in-interest are on notice that their right to payment is subordinated to that of a mortgage creditor.

Debtor also argues that the Trustee's approach is contrary to section 7.6, paragraph 7 of the District Form Chapter 13 Plan. Section 7.6, paragraph 7 of the District Plan provides:

> If Debtor is current as of the petition date and elects to pay the ongoing mortgage directly but subsequently defaults, Debtor should file a motion to modify the Plan within thirty (30) days of receiving notice of the default to provide for the payment of the post-petition mortgage arrears. The future ongoing mortgage payments shall be paid by the Trustee. *The motion to modify the Plan must state the name, address, and account number of the Mortgage Creditor to whom payments are to be made; the date the Trustee is to commence the ongoing mortgage payments; and the treatment of the post-petition delinquency including the gap between the date when Debtor modified the Plan and the date on which the Trustee is to commence the ongoing mortgage payments.* The Trustee may also file a motion to modify the Plan in the event of a post-petition default.

District Plan, § 7.6 (emphasis added). Thus, according to Debtor, not permitting gap payments to cure post-petition arrears is inconsistent with the District Plan which allows post-petition gap

16

payments for plan modifications seeking to transition from a non-conduit to a conduit plan. The Court disagrees.

Section 7.6 of the District Plan applies only to debtors who were current on their mortgage as of the petition date and elected to pay their ongoing mortgage payments directly rather than through the Trustee as a disbursing agent. In this situation, a logistical problem also arises because the Trustee must take into account the time delay between when a debtor makes their first mortgage payment to the Trustee and when the Trustee makes its subsequent disbursement to the mortgage creditor.

The Court recognizes that facially, the Trustee's approach does appear to contradict section 7.6 of the District Plan. Court notes, however, as previously explained, under the Code, unless the plan states otherwise, a chapter 13 trustee is required to make all payments to creditors under the plan. 11 U.S.C. § 1326(b). Whether a plan may allow for direct disbursements by the debtor is up to the discretion of the bankruptcy court. ***In re Foster***, 670 F.2d 478, 486 (5th Cir. 1982).

The Bankruptcy Court in the Western District of Texas has exercised that discretion and determined that debtors who are current on their mortgage payments as of the petition date may pay their ongoing mortgage payments directly. Where a debtor subsequently defaults on its mortgage payment, however, the Courts determined that the chapter 13 trustee should step into the debtor's shoes as the disbursing agent. The Court is of the opinion that such a determination was a proper exercise of discretion. As such, section 7.6 of the District Plan simply reflects the use of gap payments to facilitate the change in disbursement agents. Without doing so, the debtors would not be able to effectuate a proper cure and maintain which would ultimately result in debtors possibly losing their home—a consequence the Court is trying to avoid.

## CONCLUSION

Based on the foregoing analysis, the Motion to Modify is denied, Trustee's Objection to the Motion to Modify is sustained, and the Trustee's Motion to Dismiss is reset to March 26, 2019 at 9:30 a.m.

IT IS THEREFORE ORDERED Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss, To Add Post-Petition Mortgage Arrears and First Request for Additional Attorney's Fees (ECF No. 21) is DENIED.

IT IS FURTHER ORDERED that Trustee's Objection to Debtor's Motion to Modify Plan Post-Confirmation in Response to Trustee's Motion to Dismiss, To Add Post-Petition Mortgage Arrears and First Request for Additional Attorney's Fees is SUSTAINED.

IT IS FURTHER ORDERED that Trustee's Motion to Dismiss Case for Failure to Make Plan Payments (ECF No. 16) is RESET to March 26, 2019 at 9:30 a.m.

###